Citation Nr: 1602623 
Decision Date: 01/28/16 Archive Date: 02/05/16

DOCKET NO. 13-06 493 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina



THE ISSUES

1. Entitlement to an evaluation in excess of 10 percent for degenerative disc disease of the lumbosacral spine prior to December 5, 2013.
 
2. Entitlement to an evaluation in excess of 20 percent for degenerative disc disease of the lumbosacral spine on or after December 5, 2013. 



REPRESENTATION

Appellant represented by: Gentry C.M. Hogan, Attorney 



ATTORNEY FOR THE BOARD

S. Krunic, Associate Counsel
INTRODUCTION

The Veteran served on active duty from November 1967 to November 1970. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office in Winston-Salem, North Carolina. The June 2010 rating decision continued a 10 percent rating for degenerative disc disease of the lumbosacral spine. 

In December 2013, the RO increased the evaluation from 10 percent to 20 percent, effective from December 5, 2013. Applicable law mandates that, when a veteran seeks an increased evaluation, it will generally be presumed that the maximum benefit allowed by law and regulation is sought, and it follows that such a claim remains in controversy where less than the maximum benefit available is awarded. See AB v. Brown, 6 Vet. App. 35 (1993). Thus, the issue remains on appeal.

The Board notes that the Veteran's appeal originally included the issue of entitlement to service connection for a bilateral hip disorder. However, in a December 2013 rating decision, the RO granted service connection for right and left hip degenerative joint disease, and the Veteran has not disagreed with the initial rating or effective date assigned; therefore, those matters are not in appellate status Grantham v. Brown, 114 F. 3d 1156, 1158 (Fed. Cir. 1997) (holding that a separate notice of disagreement must be filed to initiate appellate review of "downstream" elements such as the disability rating or effective date assigned).

The Board also notes that the Veteran had requested a videoconference hearing before the Board in his February 2013 VA Form 9; however, he withdrew that request in a September 2015 written statement and has not submitted another request for a hearing since that time. As such, the Veteran's hearing request is deemed withdrawn. 38 C.F.R. § 20.704 (2015).

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing system. Virtual VA contains additional VA treatment records that were not considered by the RO; however, in December 2015, the Veteran submitted a waiver of the RO's initial consideration of this evidence. 


FINDINGS OF FACT

1. For the period prior to December 5, 2013, the Veteran's disc degenerative disc disease of the lumbosacral spine was not productive of forward flexion of the thoracolumbar spine to greater than 30 degrees but not greater than 60 degrees; a combined range of motion of the thoracolumbar spine not greater than 120 degrees; muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; or, incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months.

2. On or after December 5, 2013, the Veteran's degenerative disc disease of the lumbosacral spine has not been not productive of forward flexion of the thoracolumbar spine to 30 degrees or less; favorable ankylosis of the entire thoracolumbar spine; or incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months.


CONCLUSIONS OF LAW

1. For the period prior to December 5, 2013, the criteria for an evaluation in excess of 10 percent for degenerative disc disease of the lumbosacral spine have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.71a, Diagnostic Code 5242 (2015).

2. On or after December 5, 2013, the criteria for an evaluation in excess of 20 percent for degenerative disc disease of the lumbosacral spine have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.71a, Diagnostic Code 5242 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Upon receipt of a substantially complete application for benefits, VA must notify the claimant of what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and, (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that, upon receipt of an application for a service connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 

With regard to claims for increased disability ratings for service-connected conditions, the law requires VA to notify the claimant that, to substantiate a claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability. 38 U.S.C.A. §5103(a); 38 C.F.R. § 3.159(b); Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration. Finally, the notice must provide examples of the types of medical and lay evidence that the Veteran may submit (or ask the VA to obtain) that are relevant to establishing his or her entitlement to increased compensation. However, the notice required by section 5103(a) need not be specific to the particular Veteran's circumstances; that is, VA need not notify a Veteran of alternative diagnostic codes that may be considered or notify of any need for evidence demonstrating the effect that the worsening of the disability has on the particular Veteran's daily life. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

In this case, the RO provided the Veteran with a notice letter in March 2010, prior to the initial decision on the claim. Therefore, the timing requirement of the notice as set forth in Pelegrini has been met and to decide the appeal would not be prejudicial to the claimant. Moreover, the requirements with respect to the content of the notice were met in this case. In the letter, the RO notified the Veteran of the evidence necessary to substantiate the increased evaluation claim and examples of the types of such evidence. The letter also informed the division of responsibilities in obtaining the evidence to support the claim and explained how disability ratings and effective dates are determined.

The duty to assist the Veteran has also been satisfied in this case. The Veteran's service treatment records and all identified and available post-service medical records, including VA treatment and private treatment reports, have been associated with the claims file and were reviewed in connection with the claim. The Veteran has not identified any other outstanding records that are pertinent to the issue currently on appeal.

The Veteran was also afforded VA examinations in May 2010 and December 2013 in connection with his claim. The Board finds that the VA examinations obtained in this case are adequate, as they are predicated on a review of the medical history, as well as on a physical examination and fully address the rating criteria that are relevant to rating the disability in this case. 

In addition, there is also no objective evidence indicating that there has been a material change in the severity of the Veteran's lumbar spine disability since he was last examined. 38 C.F.R. § 3.327(a) (2015). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95. 

For these reasons, the Board concludes that VA has fulfilled the duty to assist the Veteran in this case. Hence, there is no error or issue that precludes the Board from addressing the merits of this appeal. 


Law and Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. 38 C.F.R. § 4.7. 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings.

Where a veteran appeals the denial of a claim for an increased disability rating for a disability for which service connection was in effect before he filed the claim for increase, the present level of the veteran's disability is the primary concern, and past medical reports should not be given precedence over current medical findings. Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994). However, where the question for consideration is a higher initial rating since the grant of service connection, evaluation of the medical evidence since the grant of service connection to consider the appropriateness of "staged rating" (assignment of different ratings for distinct periods of time, based on the facts found) is required. Fenderson v. West, 12 Vet. App. 119, 126 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage and the functional loss with respect to all of these elements. In evaluating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated innervation, or other pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. Pain on movement, swelling, deformity or atrophy of disuse as well as instability of station, disturbance of locomotion, interference with sitting, standing and weight bearing are relevant considerations for determination of joint disabilities. 38 C.F.R. § 4.45. Painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimal compensable rating for the joint. 38 C.F.R. § 4.59.

Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). In Mitchell, pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance (38 C.F.R. §§ 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing (38 C.F.R. § 4.45). Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Therefore, in rating the severity of a joint disability, VA must determine the overall functional impairment due to these factors.

The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. The guidance provided under DeLuca must be followed in adjudicating claims where a rating under the Diagnostic Code provisions governing limitation of motion should be considered. However, the provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45, should only be considered in conjunction with the Diagnostic Code provisions predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996).

The Veteran's degenerative disc disease of the lumbosacral spine has been evaluated pursuant to 38 C.F.R. § 4.71a, General Rating Formal for Diseases and Injuries of the Spine, Diagnostic Code 5242.

Under the General Rating Formula for Diseases and Injuries of the Spine, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, a 10 percent evaluation is appropriate for forward flexion of the thoracolumbar spine greater than 60 degrees, but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. A 20 percent evaluation is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent disability evaluation is warranted for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent disability evaluation is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent disability evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diagnostic Codes 5235-5243.

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be rated separately, under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula, Note (1).

For VA compensation purposes, normal range of motion for the thoracolumbar spine is 90 degrees of forward flexion, 30 degrees of extension, 30 degrees of left and right lateral flexion, and 30 degrees of left and right lateral rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees, consisting of the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right lateral rotation. See 38 C.F.R. § 4.71a, General Rating Formula, Note (2) and Plate V.

In addition, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. See 38 C.F.R. § 4.71a, General Rating Formula, Note (5).

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 20 percent evaluation is warranted for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. A 40 percent evaluation is warranted for incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. A 60 percent evaluation is warranted for incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a , Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes.

An incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id. , Note (1). If intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, evaluate each segment on the basis of chronic orthopedic and neurologic manifestations or incapacitating episodes, whichever method results in a higher evaluation for that segment. Id., Note (2).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the weight of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to an evaluation in excess of 10 percent for his lumbar spine disability for the period prior to December 5, 2013, or an evaluation in excess of 20 percent for the period on or after December 5, 2013.

Under the General Rating Formula, in order for the Veteran to warrant the next higher 20 percent evaluation prior to December 5, 2013, the evidence must establish that he had forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; a combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. The May 2010 VA examination revealed forward flexion to 70 degrees with no additional loss of motion due to fatigue, weakness, lack of endurance, or incoordination. He also had extension to 22 degrees, lateral flexion to 25 degrees bilaterally, right lateral rotation to 22 degrees, and left lateral rotation 20 degrees. In addition, there was no evidence of muscle spasms, abnormal gait, or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. In fact, the May 2010 VA examiner noted that the Veteran's gait and posture were normal and indicated that there was no abnormal spinal curvature such as kyphosis, scoliosis, and lumbar lordosis. He also noted that that the Veteran did not have muscle spasms, tenderness, or guarding. 

The Board does note that a March 2012 private examination noted that the Veteran was limited in forward flexion and had a slightly antalgic gait, but there is no indication that he was limited to 60 degrees or less. Nor is there any documentation that he had combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Accordingly, the Veteran is not entitled to an initial evaluation in excess of 10 percent prior to December 5, 2013, under the General Rating Formula.

For the period beginning on December 5, 2013, in order to warrant a higher 40 percent evaluation under the General Rating Formula, the evidence must show forward flexion of the thoracolumbar spine to 30 degrees or less or, favorable ankylosis of the entire thoracolumbar spine. 

The Veteran has not been shown to have forward flexion of the thoracolumbar spine to 30 degrees or less. In this regard, the December 2013 VA examination revealed forward flexion to 60 degrees, even considering the measurements where objective pain started (55 degrees). He also had 20 degrees of extension with pain at 15 degrees, lateral flexion to 20 degrees with pain at 15 degrees bilaterally, and lateral rotation to 20 degrees with pain at 15 degrees bilaterally.

Moreover, the Veteran has not been shown to have favorable ankylosis of the entire thoracolumbar spine. Ankylosis is defined as "immobility and consolidation of a joint due to disease, injury, surgical procedure." Lewis v. Derwinski, 3 Vet. App. 259 (1992) (internal medical dictionary citation omitted). Based on the aforementioned range of motion findings, the record shows that the Veteran's lumbar spine is not fixated or immobile. While the noted ranges of motion were limited by pain, these findings are consistent with and fully contemplated by the 20 percent rating currently assigned for the period beginning on December 5, 2013.

In addition, the December 2013 VA examiner assessed the Veteran as having intervertebral disc syndrome of the thoracolumbar spine affecting the bilateral sciatic nerve. However, there is no indication that the Veteran has had any incapacitating episodes. In fact, the May 2010 VA examiner stated that there were incapacitating episodes of spine disease, and the December 2013 VA examiner noted that the Veteran did not have any incapacitating episodes over the past 12 months due to intervertebral disc syndrome. As previously noted, an incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. See 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1). There is no record that the Veteran was actually prescribed bed rest at any time during either period on appeal. As such, to the extent this criteria is for application, the Veteran has not been shown to have met the criteria for an increased evaluation under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes.

The Board further finds that a separate disability rating is not warranted because the evidence does not demonstrate that the Veteran suffers from a separate neurological disability distinct from his already service-connected lumbar spine disability. See Bierman v. Brown, 6 Vet. App. 125, at 129-32 (1994). Separate disability ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition was not "duplicative of or overlapping with the symptomatology" of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 262 (1994). 

The Board notes that the Veteran is already in receipt of separate disability ratings for radiculopathy of each lower extremity. The record shows that the appellant did not initiate an appeal with the RO's December 2013 initial rating or effective date. Thus, those matters are not currently in appellate status. See Grantham v. Brown, 114 F.3d 1156, 1158 (Fed.Cir.1997) (holding that a separate notice of disagreement must be filed to initiate appellate review of "downstream" elements such as the disability rating or effective date assigned).

Moreover, the May 2010 VA examination revealed normal reflexes, and there was no abnormal sensation noted in any location. The December 2013 VA examiner also indicated that the Veteran had normal reflexes, as well as a normal sensory examination. In addition, the latter examiner specifically stated that there were no other neurologic abnormalities related to the Veteran's spine disability other than radiculopathy, such as bowel or bladder problems or pathologic reflexes. Thus, the Board concludes that the preponderance of the evidence weighs against a finding that the Veteran suffers from additional neurological deficiency so as to warrant a separate disability rating under the diagnostic codes pertinent to rating neurological disorders.

The Board has also considered the provisions of 38 C.F.R. §§ 4.40, 4.45, 4.59, and the holdings in DeLuca. However, increased evaluations for the Veteran's lumbar spine disability is not warranted on the basis of functional loss due to pain or weakness in this case, as the Veteran's symptoms are supported by pathology consistent with the assigned 10 percent rating prior to December 5, 2013, and 20 percent rating since December 5, 2013, and no higher. In this regard, the Board observes that the Veteran complained of pain on numerous occasions. However, the effect of the pain in the Veteran's low back is contemplated in the currently assigned 10 and 20 percent evaluations. The Veteran's complaints do not, when viewed in conjunction with the medical evidence, tend to establish weakened movement, excess fatigability, or incoordination to the degree that would warrant an increased evaluation. In fact, the May 2010 VA examiner noted pain following repetitive motion, but there was no increased limitation of motion due to fatigue, weakness, or incoordination on repetitive use. The December 2013 VA examiner noted pain on movement, but no other additional functional loss or additional limitation of motion after repetitive use due to fatigue, weakness, or lack of endurance. As such, the disability does not more nearly approximate the criteria for the next higher evaluations. As noted, pain alone does not constitute functional loss under VA regulations that evaluate disabilities based upon loss of motion. Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

Therefore, the Board finds that the preponderance of the evidence is against the Veteran's claim for an evaluation in excess of 10 percent for the period prior to December 5, 2013, and in excess of 20 percent on or after December 5, 2013, for degenerative disc disease of the lumbosacral spine. As such, the benefit-of-the-doubt rule does not apply, and the claim is denied. Gilbert, 1 Vet. App. 49 (1990).


In reaching this decision, the potential application of various provisions of Title 38 Code of Federal Regulations have been considered, whether or not they were raised by the Veteran. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); Barringer v. Peake, 22 Vet. App. 242, 243-44 (2008). In particular, the Board has considered the provisions of 38 C.F.R. § 3.321(b)(1). However, in this case, the Board finds that the record does not show that the Veteran's lumbar spine disability is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id.; see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1) ) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. A comparison between the level of severity and symptomatology of the Veteran's assigned evaluation with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Indeed, the Veteran's chief complaints, including, pain, limitation of motion, and functional loss are contemplated in the assignment of the 10 and 20 percent disability evaluations, as discussed above. 

The Board notes that, for all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell, 25 Vet. App. at 37. For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board finds that the schedular criteria reasonably describe the Veteran's disability picture in this case. Thus, it cannot be said that the available schedular evaluations for this disability are inadequate. There are higher ratings available under the diagnostic codes, but the Veteran's disability is not productive of such manifestations, as discussed above.

The Board further notes that, under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. In this case, however, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional symptoms that have not been attributed to a specific service-connected disability. The Veteran and his representative have not identified any symptom resulting from the combined effect of his service-connected disabilities that are not contemplated in the rating criteria for those disorders. Thus, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

Based on the foregoing, the Board finds that the requirements for an extraschedular evaluation for the Veteran's service-connected degenerative disc disease of the lumbosacral spine under the provisions of 38 C.F.R. § 3.321(b)(1) have not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun, supra.


ORDER

An evaluation in excess of 10 percent for degenerative disc disease of the lumbosacral spine prior to December 5, 2013, is denied.

An evaluation in excess of 20 percent for degenerative disc disease beginning on December 5, 2013, is denied.



____________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs